**WON PAK, Adisu Tadesse, and Ronny Luong, Appellants,**

v.

**Cameron M. HARRIS, Garza & Staples, P.C., Garza & Staples, LLP, and Dismuke, Waters & Schriedel f/k/a Dismuke & Waters, P.C., Appellees.**

No. 05–08–00857–CV.

Court of Appeals of Texas, Dallas.

April 15, 2010.

Rehearing Overruled June 15, 2010.

David K. Line, The Line Law Firm, P.C., Dallas, TX, for Appellants.

Martin Samuel Schexnayder, Houston, TX, Nicole Therese Leboeuf, Shackelford Melton & McKinely, Dallas, TX, for Appellees.

Before Justices MORRIS, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice MORRIS.

In this appeal, Won Pak, Adisu Tadesse, and Ronny Luong challenge a take-nothing summary judgment on their lawsuit against their former attorneys Cameron M. Harris, Garza & Staples, P.C., Garza & Staples, L.L.P., and Dismuke, Waters & Schriedel f/k/a Dismuke & Waters, P.C. Appellants contend the trial court erred in characterizing all of their claims as professional negligence claims that were barred by the two-year statute of limitations. For the reasons that follow, we affirm the trial court's judgment.

### I.

Appellants owned and operated a computer refurbishing business known as Sun Tec Computers, Inc. In October 2003, appellants, along with David Good, Robert Beshirs, and Timothy Southwell, met with Cameron Harris to discuss merging Sun Tec with two companies owned by Beshirs and Southwell.[1] The six individuals signed an engagement letter with Harris on November 17, 2003. In the letter, Harris agreed to represent the six individuals as the initial investors in organizing a new Texas limited partnership with a new Texas limited liability company as the general partner of the limited partnership, which in turn would own three other limited liability companies, one of which would potentially service Sun Tec customers.

The formation documents for the new entities were drafted by Harris and signed by the six clients on December 31, 2003. Harris was not present at the signing. On January 12, additional documents were presented to and signed by Pak, including a contract assigning Sun Tec's vendor contracts to IVEX, LLC, one of the newly formed limited liability companies.[2] The following week, on January 19, Goode, Beshirs, and Southwell (three of the four managing directors of the general partner of the newly created limited partnership) voted to exclude appellants Pak and Tadesse from employment by and management of IVEX.[3] Appellants contend that by this ouster, they lost the value and future profits of their company, Sun Tec, to Beshirs and Southwell.[4] The next day, appellants retained another attorney to represent them in their dispute with Southwell, Good, and Beshirs.[5] But before appellants filed any claims against them, Good, Beshirs, and Southwell sued Tadesse and Won Pak in Tarrant County seeking a

---

1.  David Good was the president of Sun Tec but owned no stock in the company.

2.  Harris denied drafting this assignment document.

3.  Although appellants alleged in their pleadings and on appeal that the ouster occurred on January 19, 2004, the summary judgment evidence includes an excerpt from Won Pak's deposition indicating the ouster occurred a day later, on January 20.

4.  After the merger and ouster, appellants discovered that Beshirs and Southwell had been convicted for federal crimes and that their two companies had purportedly been used to carry out their crimes.

5.  According to appellants' third amended original petition pleading, the attorney contacted Harris to inquire about the matter.

declaratory judgment with respect to the merger agreement.

Appellants filed this lawsuit against Harris and his current and previous law firms on November 17, 2006. In their live pleadings, they asserted claims for negligence, breach of fiduciary duty, and conspiracy to commit fraud. Appellees moved for partial summary judgment on all causes of action pleaded by appellants other than those for professional negligence, arguing they constituted an impermissible fracturing of the negligence claim. The trial court granted appellees' motion and rendered a take-nothing judgment on all claims asserted against appellees other than negligence. Appellees then moved for a second summary judgment on the grounds that appellants' negligence claims were time-barred under the applicable statute of limitations. The trial court agreed and granted summary judgment on appellants' remaining negligence claims. This appeal followed.

## II.

■ In their first motion for summary judgment, appellees argued that all causes of action except those for negligence should be dismissed because they were nothing more than an impermissible division or fracturing of appellants' professional negligence claim. In their first issue on appeal, appellants argue the anti-fracturing rule does not apply because their allegations of breach of fiduciary duty, conflicts of interest, misrepresentations, and aiding and abetting fraud support causes of actions for breach of fiduciary duty and conspiracy to commit fraud separate and apart from their negligence claims.[6]

■ The anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, breach of fiduciary duty, or violations of the DTPA. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr. P.C.*, 284 S.W.3d 416, 426–27 (Tex.App.-Austin 2009, no pet.). For the anti-fracturing rule to apply, however, the gravamen of appellants' complaints must focus on the quality or adequacy of the attorney's representation. *Murphy v. Gruber*, 241 S.W.3d 689, 692–93 (Tex.App.-Dallas 2007, pet. denied). In contrast, claims of breach of fiduciary duty against an attorney focus on whether the attorney obtained an improper benefit from representing the client and involve the integrity and fidelity of the attorney. *Id.* at 693. Merely characterizing conduct as a "misrepresentation" or "conflict of interest" does not necessarily transform what is really a professional negligence claim into a fraud or breach of fiduciary duty claim. *Id.* at 697. Whether certain allegations asserted against an attorney and labeled as breach of fiduciary duty or fraud are actually claims for professional negligence is a question of law to be determined by the court. *Id.* at 692.

Appellants argue that they have asserted a proper breach of fiduciary claim and a fraud claim against appellees based on the following allegations. Appellants claim that Harris represented them with divided loyalties contrary to his oral promise to treat each person "equally and fairly" and failed to inform them of the conflict of interest between appellants and the other investors as well as other material facts. Specifically, they contend a conflict of interest arose as result of an October 23

---

**6.** Appellants do not challenge the trial court's take-nothing summary judgment on their claims for stock fraud and securities fraud.

Accordingly, we express no opinion on the trial court's disposition of those claims.

email from Beshirs in which he relayed Good's request that Harris keep confidential a previous discussion Harris, Beshirs, and Good had about "the tax issue." The email further indicated that Good did not "want his fellow shareholders to know we talked."

Appellants allege Harris did not disclose the email to them or alert them to any possible conflict of interest created by the email, which was sent the day before all six individuals met with Harris for the first time. Had they known about this conversation between Good and Beshirs, appellants contend they would not have proceeded with the merger.[7] Appellants also claim Harris facilitated, conspired with, or aided and abetted the fraud of the other investors by not disclosing the conflict of interest allegedly created by the email, "having divided loyalties among the six clients," failing to disclose Beshir's email, failing to disclose after the merger that he did not draft the document assigning Sun Tec's vendor's contracts to IVEX, and "failing to take corrective action" after he learned of their fraud.

After reviewing the record before us, we conclude the allegations upon which appellants rely to support their breach of fiduciary duty and conspiracy to commit fraud claims do nothing more than recast their claims for professional negligence under alternative labels. The allegations involve the question of whether Harris failed to exercise the degree of care, skill, or diligence in performing his duty to inform appellants about issues that could arise during the representation of multiple clients and his duty to communicate with and among the clients he represented in this matter. Appellants allege Harris's mishandling of the representation enabled fellow investors to defraud them out of their business. They do not complain specifically about any improper benefit Harris received from representing appellants. At the heart of appellants' complaint is Harris's alleged failure to provide adequate legal representation by his failure to properly inform, advise, and communicate with them. As such, we conclude the gist of appellants' allegations involves the quality of Harris's representation rather than the integrity and fidelity of the attorney. These complaints sound in negligence and not breach of fiduciary duty or fraud.

■ In reaching this conclusion we necessarily reject appellants' position that their conflict of interest allegations give rise to a breach of fiduciary duty claim. Even if a complaint implicates a lawyer's fiduciary duties, it does not necessarily follow that such a complaint is actionable apart from a negligence claim. In fact, the standard of care in attorney negligence cases often refers to and is defined by the characteristics inherent in the fiduciary duty between the lawyer and the client. See Murphy, 241 S.W.3d at 696. Appellants do not allege Harris obtained an improper benefit from his representation or his failure to disclose any conflict of interest. To the extent that appellants argue Harris favored his own pecuniary interest in obtaining his legal fee over appellants' interests, we conclude that this interest, without more, is insufficient to allege the type of dishonesty or intentional deception necessary to convert a negligence claim into one for breach of a fiduciary duty. See Beck, 284 S.W.3d at 433–34; Murphy, 241 S.W.3d at 699. As in Beck and Murphy, whether Harris received attorney's fees or an improper personal benefit from the alleged failures to

---

7. Appellants contend the fact that Beshirs and Good were secretly speaking indicated dishonesty on their part.

disclose is clearly not the gravamen of appellants' complaints. *See Beck*, 284 S.W.3d at 433–34; *Murphy*, 241 S.W.3d at 699. Instead, appellants' focus is that Harris's actions caused or contributed to the other investors being able to defraud them. Accordingly, we conclude the trial court did not err in determining appellants' allegations constitute claims of professional negligence. We resolve appellants' first issue against them.

■ In their second issue, appellants challenge the trial court's ruling on appellees' second motion for summary judgment. Appellants argue the trial court incorrectly concluded their professional negligence claims were time-barred. Generally, a suit for professional negligence must be brought no later than two years from the date the cause of action accrues. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.2009); *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex.2001). A cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later and even if all resulting damages have not yet occurred. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). To be entitled to summary judgment based on their limitations defense, appellees must conclusively establish the date appellants' cause of action accrued, negate the applicability of the discovery rule or any tolling doctrines raised, and prove as a matter of law that appellants' claims are time-barred. *See Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990).

■ Appellants acknowledge their lawsuit was filed two years after Harris completed his work. And they do not dispute they were aware that they had been in-jured as early as January 19, 2004, the date they were ousted. Instead, they argue the statute of limitations was tolled under either *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex.1991), the discovery rule, or "equitable tolling."

■ Under *Hughes*, when an attorney commits legal malpractice in the prosecution or defense of a claim, the statute of limitations is tolled until all appeals on the underlying claim are exhausted. *Hughes*, 821 S.W.2d at 156–57. Appellants concede that Harris did only transactional work and, consequently, the alleged negligence did not occur in the prosecution or defense of a claim. Nevertheless, appellants contend the *Hughes* tolling doctrine applies to their professional negligence claims against appellees until all appeals are exhausted in appellees' Tarrant County lawsuit against them. They claim the policy rationales set forth in *Hughes* are satisfied by applying the rule to their claims. Specifically, they contend that prosecuting this malpractice case while defending appellees' lawsuit would require appellants to take inconsistent positions and resolution of appellees' lawsuit might determine the malpractice suit.[8]

We have previously rejected the applicability of the *Hughes* tolling doctrine in professional negligence cases involving transactional work. *See Murphy v. Mullin, Hoard & Brown, L.L.P.*, 168 S.W.3d 288, 292–93 (Tex.App.-Dallas 2005, no pet.). Because any alleged negligence arising out of Harris's representation of appellants in the merger transaction at issue is not malpractice committed during the prosecution or defense of a claim that

---

**8.** In their brief, appellants differentiate application of the *Hughes* tolling rule between their fraud and malpractice claims. Because we have previously concluded that appellants' claims sound only in professional negligence and not in fraud or breach of fiduciary duty, we do not address these arguments.

results in litigation, the *Hughes* rule does not apply to appellants' claims. *See id.*

■ Appellants assert that even if the *Hughes* rule does not apply to their negligence claims, the discovery rule and "equitable tolling" delayed accrual of their negligence claims until they discovered the October 23 email and that the Sun Tec assignment document was not prepared by Harris.[9] The summary judgment evidence established that on January 19, 2004, only three weeks after the closing at which the merger documents were signed, appellants were ousted from IVEX, the new company that had been assigned Sun Tec's vendor contracts. The next day, appellants consulted with another attorney to explore potential causes of action against various entities as a result of the ouster. In fact, in a February 4, 2004 email to his new attorney, appellant Tadesse questioned the reorganization structure Harris set up, Harris's failure to have all of the paperwork, and whether Harris represented "all the partners' interest." The email further asserts that Harris "left Won and I[sic] vulnerable." There was also summary judgment evidence that appellant Luong knew as early as February 2004 that he could bring a claim against Harris for the work performed in the merger transaction. Finally, in April 6, 2004 responses to requests for disclosure in the Tarrant County lawsuit against them, appellants specifically named Harris as a potential party. Based on the summary judgment record before us, appellees conclusively established that appellants' cause of action for professional negligence against appellees accrued no later than April 6, 2004 when appellants named Harris as a potential party in the Tarrant County lawsuit. The summary judgment evidence further negated the applicability of the discovery rule and the other tolling doctrines pleaded by appellants. That additional facts or details arguably supporting appellants' professional negligence cause of action were revealed during the discovery period in this lawsuit does not alter our conclusion. Because appellants' lawsuit was not filed within two years of April 6, 2004, their professional negligence claims were time-barred as a matter of law, and the trial court did not err in granting summary judgment based on limitations. We resolve appellants' second issue against them.

We affirm the trial court's judgment.

---

9. Appellants apparently discovered this infor- mation after this lawsuit was filed.