**Affirmed and Opinion Filed January 23, 2017**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01375-CV

**ROGER K. PARSONS, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR FOR THE ESTATE OF ESTHER ANN KARTSOTIS PARSONS, Appellant**
**V.**
**MICHAEL KEVIN QUEENAN AND THE QUEENAN LAW FIRM, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-00971**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Stoddart
Opinion by Justice Francis

Roger K. Parsons, individually and as independent administrator for the estate of his wife, Esther Ann Kartsotis Parsons, appeals the trial court's summary judgment disposing of his negligence, breach of fiduciary duty, and fraud claims against appellees Michael Kevin Queenan and the Queenan Law Firm. In two issues, Parsons contends the trial court erred by granting Queenan's summary judgment on anti-fracturing and statute of limitations grounds. We affirm.

This is the third malpractice lawsuit brought by Parsons against lawyers who have represented him since the death of his wife in a plane crash more than two decades ago. In 1991, Parsons retained Windle Turley and Windle Turley, P.C. to represent him in wrongful death and survival actions in connection with his wife's death. A federal jury awarded Parsons $4.75 million in actual damages and also made predicate gross negligence findings, but the judge set

aside the gross negligence findings on legal sufficiency grounds. *See Parsons v. E.I. Du Pont De Nemours*, 91 F.3d 139 (5th Cir. 1996) (per curiam) (not designated for publication). Parsons appealed to the Fifth Circuit Court of Appeals, which affirmed the decision. *Id.*

More than two years later, Parsons retained attorneys Robert Greenberg and Robert Motsenbocker to sue Turley for legal malpractice, alleging among other things that Turley had negligently failed to use and discover evidence of the pilot's alcohol problem. *See Parsons v. Turley*, 109 S.W.3d 804, 808 (Tex. App.—Dallas 2003, pet. denied). Turley moved for summary judgment on the ground he was not served with citation prior to the time the statute of limitations expired. The trial court granted summary judgment for Turley, and this Court affirmed the summary judgment. *Id.* at 808–10.

Parsons then sued Greenberg and Motsenbocker for malpractice for their representation in the Turley litigation. In addition to disgorgement of fees, Parsons sought as actual damages the "lost punitive damages" from the underlying wrongful death suit. One year into the suit, Parsons's attorneys withdrew and Parsons hired Queenan to replace them. Queenan represented Parsons for about twenty months. During that time, the trial court granted a partial summary judgment on lost punitive damages and, according to Parsons, later "expanded the effect" of that ruling to limit him to a refund of fees. Shortly after, Parsons wanted to add the law firm Baron & Budd and the estate of Fred Baron as defendants in the suit because Baron had recommended Greenberg to Parsons. On December 22, 2008, Parsons, acting pro se, filed an amended petition adding the Baron defendants. Seven weeks later, the trial court granted Queenan's motion to withdraw as Parsons's attorney. The order recites that Parsons agreed to Queenan's withdrawal from the lawsuit.

Once Queenan withdrew, Parsons was unable to find new counsel and represented himself. The trial was held about eight months later. Parsons obtained a negligence finding

against Greenberg, but the jury did not award any damages. Parsons appealed, and the Fort Worth Court of Appeals affirmed the judgment. *Parsons v. Greenberg*, No. 02-10-00131-CV, 2012 WL 310505, at *1 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.). Parsons appealed to the Texas Supreme Court, which denied his petition for review on October 19, 2012 and denied his motion for rehearing on December 7, 2012.

After Parsons's appeal in the Greenberg suit became final, Parsons filed a Texas Rule of Civil Procedure 202 petition seeking Queenan's deposition and certain categories of documents from Queenan. The trial court denied Parsons's request, and fourteen months later, on January 27, 2015, he filed this suit against Queenan. The petition alleged claims for fraud, breach of fiduciary duty, professional negligence, gross negligence, and violations of the Deceptive Trade Practices Act. In addition, the petition alleged the statute of limitations was tolled until the final appeal in the Greenberg case.

After filing an answer to the lawsuit, Queenan moved for traditional summary judgment on two grounds. First, Queenan argued the legal malpractice suit is time-barred because under the *Hughes*[1] tolling doctrine, the two-year statute of limitations was tolled until December 7, 2012, the date the supreme court denied Parsons's motion for rehearing in the Greenberg lawsuit, and Parsons did not file this suit until more than two years later, on January 27, 2015. Second, Queenan argued the fraud, breach of fiduciary duty, and DTPA claims were impermissible attempts to "fracture" his legal malpractice claim. Alternatively, he argued that even if these claims are not fractured malpractice claims, they are nevertheless time-barred.

In response, Parsons argued his negligence claim was timely filed within two years of the issuance of the mandate, which he contended was the proper date for tolling purposes. Further, he asserted that even if the negligence claim is time-barred, his fraud and breach of fiduciary

---

[1] *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1992).

duty claims are governed by a four-year statute of limitations and are not time-barred once the tolling doctrine is applied. Finally, he argued his fraud and breach of fiduciary duty claims were not fractured malpractice claims and withdrew his DTPA claim.

The trial court granted Queenan's motion for summary judgment and dismissed all of Parsons's claims with prejudice. Parsons filed a motion for new trial, which was overruled by operation of law. This appeal followed.

In his first issue, Parsons contends the trial court erred by granting summary judgment on his fraud and breach of fiduciary duty claims based on the anti-fracturing rule.

The anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, breach of fiduciary duty, or DTPA violations. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). The rule prevents legal malpractice plaintiffs from "opportunistically transforming a claim that sounds only in negligence into other claims" to avail themselves of longer limitations periods, less onerous proof requirements, or other tactical advantages. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 427 (Tex. App.—Austin 2009, no pet.).

For the anti-fracturing rule to apply, however, the gravamen of Parsons's complaints must focus on the quality or adequacy of the attorney's representation. *See Won Pak*, 313 S.W.3d at 457. In other words, if the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim rather than some other claim. *Futch v. Baker Botts, LLP*, 435 S.W.3d 383, 387 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In contrast, claims of breach of fiduciary duty against an attorney focus on whether the attorney obtained an improper benefit from representing the client and involve the

–4–

integrity and fidelity of the attorney. *Won Pak*, 313 S.W.3d at 457. Merely characterizing conduct as a "misrepresentation" or "conflict of interest" does not necessarily transform what is really a professional negligence claim into a fraud or breach of fiduciary duty claim. *Id.*

Even if a complaint implicates a lawyer's fiduciary duties, it does not necessarily follow that such a complaint is actionable apart from a negligence claim. *Won Pak*, 313 S.W.3d at 458. In fact, the standard of care in attorney negligence cases often refers to and is defined by the characteristics inherent in the fiduciary duty between the lawyer and the client. *Id.* Breach of fiduciary duty by an attorney most often involves the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations. *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Whether certain allegations asserted against an attorney and labeled as breach of fiduciary duty or fraud are actually claims for professional negligence is a question of law to be determined by the court. *Id.*

Parsons argues he alleged a proper fraud claim based on the following allegations in his original petition. Parsons claims that in conversations leading to Queenan's hire, Queenan told him he knew a judge who was friends with the presiding judge in the case and, through that friendship, Queenan "would be able to learn what the presiding judge was thinking about Parsons's case." He alleged the statement was false, that "[a]t no time, did Queenan's relationship with retired judges work to Parsons's advantage," and Queenan was "unethical" for making the statement.

Additionally, he alleged Queenan stated he would develop Parsons's fraud claim against Greenberg and Motsenbocker by "deposing witnesses" relevant to those allegations, including Greenberg and Motsenbocker. Parsons maintained this statement was also false. Further, he

stated that when the insurer failed to send a representative to a noticed deposition, Queenan dropped the matter and also "caved" when the defendants failed to provide documentation of their previous insurance companies.

These allegations do not give rise to a separate fraud cause of action. The gist of the first allegation is that Queenan contemplated, but did not successfully pursue, indirect ex parte communication with the trial judge concerning the case. Although an attorney's representation of a client should never include improper ex parte communication with a trial judge, this allegation focuses upon the quality or adequacy of the attorney's representation. The second statement simply alleges that Parsons failed to take some actions he argued were necessary to his case. This second allegation is a complaint that Queenan did not exercise the degree of care or skill that attorneys of ordinary skill and knowledge commonly possess. As such, these allegations are negligence claims.

Following his cause of action for fraud, Parsons alleged in his petition that Queenan owed him a fiduciary duty with regard to Queenan's "billing practices" and the manner in which he withdrew from the case and breached that duty. He sought damages and a forfeiture of a portion of the expenses and fees collected by Queenan.

Beginning with the "billing" complaint, Parsons alleged Queenan billed him "about $800,000 and did little work on the practical aspects" of his case. In his brief, he explains the primary reason for Queenan's hire was to recover "lost punitive damages," and once the trial court granted summary judgment on that issue, "the justification for Queenan's exorbitant hourly fee went with them." He asserts Queenan owed a fiduciary duty to "advise him that he was throwing good money after bad, or to develop other, potential avenues for obtaining relief," but instead Queenan "continued to milk Parsons for all he was worth without doing anything to try to salvage his case."

We conclude the gist of this allegation concerns the quality of Queenan's representation, specifically, his failure to properly advise Parsons and to develop and pursue a better trial strategy, which are claims of negligence. *See Murphy v. Gruber*, 241 S.W.3d 689, 698–99 (Tex. App.—Dallas 2007, pet. denied). Although he complains the "justification" for Queenan's "exorbitant hourly fee" disappeared once summary judgment was granted on lost punitive damages, Parsons does not allege he was billed for work never performed or that Queenan charged a fee that exceeded the amount agreed upon. *See id.* at 699 (concluding allegation that lawyers "chos[e] their own interest in obtaining a multimillion dollar fee" in case does not, without more, allege type of dishonesty or intentional deception to support breach of fiduciary duty claim).

Parsons also alleged Queenan breached his fiduciary duty in the manner of his withdrawal from the case. He suggested a "cooperative effort" existed to force Queenan to withdraw from his case, "by creating a personal interest for Queenan that conflicted with his fiduciary duty to Parsons" and Queenan "bowed" to this effort. Specifically, Parsons alleged that during Queenan's representation of him, Queenan hired attorney William Cobb to defend Queenan in an unrelated legal malpractice action. Parsons stated that suit was filed on January 8, 2008. Thirteen months later, Cobb appeared in Parsons's malpractice lawsuit on behalf of Baron and Budd after Parsons, acting pro se and while Queenan was still his counsel, amended the petition to add the firm as a defendant. Five days later, the trial court signed an order granting Queenan leave to withdraw. Parsons alleged Cobb came in before the hearing and shook hands with Queenan, and the two "acted as though this was the first time they'd met." Further, Parsons asserted Cobb continued to represent Queenan in the malpractice action and settled the case two weeks before Parsons "was forced to represent himself (pro se) against Greenberg and Motsenbocker." In his petition, Parsons alleged Queenan owed him a duty "not

to let Cobb's work as Queenan's attorney affect Queenan, when Cobb appeared on the other side in Parson's case." Rather, Parsons asserted Queenan should have fired Cobb rather than "withdrawing and leaving Parsons pro se."

While Parsons suggests Queenan put his own personal interest over Parsons's interests, he does not brief how Cobb's representation of Queenan (in an unrelated matter) and Baron and Budd (in the Greenberg malpractice action) created a conflict of interest for Queenan in his representation of Parsons. And he did not allege Queenan pursued his own pecuniary interests or otherwise obtained an improper benefit by withdrawing from the case or failing to disclose that Cobb was his lawyer. Instead, the gist of Parsons's complaint is that Queenan abandoned him and he could not find another lawyer to represent him at trial eight months later. In fact, Parsons's petition specifically complained that Queenan "[f]ailed to represent Parsons's interest adequately and competently by withdrawing before Parsons could secure alternate representation."

We conclude this allegation challenges the degree of care Queenan owed to Parsons at the time he decided to withdraw from the case as well as his duty to fully inform Parsons of the circumstances of the withdrawal and any resulting consequences, which is more properly characterized as a malpractice claim. *See Goffney*, 56 S.W.3d at 193–94 (claim that attorney abandoned client at trial, failed to prepare adequately for trial, and misled client into believing case was properly prepared for trial constituted claim for malpractice rather than breach of fiduciary duty); *West v. Hubble*, No. 05-06-01683-CV, 2008 WL 2941854, at *2 (Tex. App.—Dallas Aug. 1, 2008, pet. denied) (mem. op.) (claims that attorney, among other things, abandoned client on eve of trial after failing to timely designate expert, withdrew from representing client after client would not consent to increase in contingent fee percentage," and agreed with opposing counsel to modify settlement agreement (to client's benefit) without

–8–

client's knowledge or consent after representation did not constitute breach of fiduciary duty but were legal malpractice claims). Moreover, to the extent any conflict was created by Cobb's representation of Queenan and Baron and Budd, it was cured by Queenan's withdrawal, which the record undisputedly shows was agreed to by Parsons. It is not "the type of dishonesty or intentional deception" that will support a breach of fiduciary duty claim. *See Murphy*, 241 S.W.3d at 699.

In summary, we conclude the allegations supporting Parsons's claims for fraud and breach of fiduciary duty sound in professional negligence because the essence of the allegations focuses on the quality or adequacy of Queenan's representation. Accordingly, the trial court did not err in concluding these claims constituted impermissible "fractured" malpractice claims. We overrule the first issue.

In his second issue, Parsons argues the trial court erred by granting summary judgment on the basis that his legal malpractice claim was barred by the statute of limitations. He argues the statute of limitations was tolled until the mandate issued on January 31, 2013, under the rule established in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991) and *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 118–19 (Tex. 2001). Because he filed suit on January 27, 2015, he argues it was not time-barred. In contrast, Queenan asserts the statute of limitations was tolled until the supreme court denied Parsons's motion for rehearing on December 7, 2012, and Parsons's suit was filed more than two years from that date, making it untimely.

The legal malpractice claims presented in this case are governed by the two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2016); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). Limitations generally begins to run when the cause of action accrues, which means when facts have come into existence that authorize a claimant to seek a judicial remedy. *Apex*, 41 S.W.3d at 120. In cases where the discovery rule applies,

–9–

limitations does not begin to run until the client discovers or should have discovered through the exercise of reasonable diligence the facts establishing the elements of a cause of action. *Id.*

In *Hughes*, the Texas Supreme Court established a tolling rule for the statute of limitations in legal malpractice cases: "[W]hen an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Hughes*, 821 S.W.2d at 157. The court held the tolling ended "when we overruled the Hughes's motion for rehearing because the last action of right that they could take and did take on the underlying case was concluded on that date." *Id.* at 158 n.6. In accordance with *Hughes*, we likewise conclude limitations in this case was tolled until December 7, 2012, the date the supreme court overruled Parsons's motion for rehearing. Consequently, Parsons's suit, filed more than two years later, was time-barred.

In reaching this conclusion, we reject Parsons's argument that the mandate should control the date tolling ended because that date would be the "best, bright line" rule. He argues *Apex Towing* crafted an "additional reference date"—when litigation is "otherwise finally concluded"–– which supports using the date of the mandate in this case. We cannot agree. In *Apex Towing,* the court applied the *Hughes* rule and determined the underlying case was not concluded until the court of appeals dismissed Apex's appeal, which was after the parties settled the case. *Apex Towing*, 41 S.W.3d at 123. Nothing in the opinion suggests that limitations is tolled from the date of the mandate. We overrule the second issue.

We affirm the trial court's order granting Queenan's summary judgment and dismissing Parsons's claims.


                                /Molly Francis/
                                MOLLY FRANCIS
                                JUSTICE

151375F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROGER K. PARSONS, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR FOR THE ESTATE OF ESTHER ANN KARTSOTIS PARSONS, Appellant

No. 05-15-01375-CV     V.

MICHAEL KEVIN QUEENAN AND THE QUEENAN LAW FIRM, Appellees

On Appeal from the 160th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-15-00971.
Opinion delivered by Justice Francis; Justices Fillmore and Stoddart participating.

In accordance with this Court's opinion of this date, the trial court's Order Granting Defendants' Motion for Summary Judgment is **AFFIRMED**.

It is **ORDERED** that appellees MICHAEL KEVIN QUEENAN AND THE QUEENAN LAW FIRM recover their costs of this appeal from appellant ROGER K. PARSONS, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR FOR THE ESTATE OF ESTHER ANN KARTSOTIS PARSONS.


Judgment entered January 23, 2017.